The facts appearing in the pleadings are as follows:
The bill sets forth that Samuel B. Spruill was appointed the guardian of two infants, Robert and William Cannon, and received their estates; that the plaintiff, Jos. J. Exum, and Bryan Randolph, the testator of the other plaintiff, Britton, were Spruill's sureties for the guardianship; that Spruill, after converting to his own use considerable sums of money belonging to his wards, resigned; that Henry J. Cannon, the defendant, was then appointed the guardian, and in behalf of his wards instituted actions on the guardian bonds against Spruill, Exum, and Britton, the executor of Randolph, then deceased; that in the suit brought in behalf of Robert Cannon judgment was given in February, 1842, for $6,211.42, with interest until paid; and in that in behalf of William, the judgment was for ( 65 ) $6,389.31, with interest in like manner. The bill further states that Spruill was much embarrassed, and, indeed, insolvent, when he resigned; and that soon afterwards, to wit, on 16 August, 1841, he executed to Henry J. Cannon a deed and assignment of all his property, in trust to secure certain debts therein specified, and amounting to about $40,000; with authority and directions to the trustees to sell the estates conveyed, and apply the proceeds in satisfaction of the debts pro rata, if not sufficient to pay the whole; that among the debts thus secured are those to the two infants, Robert and William Cannon; and that in January, 1842, or within a short time thereafter, the trustees sold the property for the sum of $13,308.20. This bill was filed in November, 1842, and further states that the defendant, Henry J. Cannon, gave his bond to Spruill, while *Page 47 
the latter was guardian, for $2,000 of the money of the wards, lent to him; and that after the judgments Spruill surrendered that bond to the defendant, the succeeding guardian, who accepted it in part payment of the judgments, and who was then, at the filing of the bill, fully able to pay it. The bill further states that the plaintiffs had applied to the defendant for an account of the trust fund, and requested him to apply immediately, in part satisfaction of the judgments, a just dividend of such portion of the fund as might be in hand, and for any residue of the judgments to give a reasonable indulgence, until the trust fund could be entirely got in, and upon a final settlement distributed. The bill also states that the necessities or interests of the infants do not require that these debts should be called in; for that their estates are not involved, and they have other ample means of maintenance, and the debts are perfectly secure; and, moreover, that the plaintiffs had offered to the present guardian, and still offered, any further security he might require, and to advance any sums he might judge proper for the use of the wards, until the true balance of the debts could be ascertained, after the application of their proportion of the trust fund. The bill then charges that the guardian, the defendant, refuses to admit any credit whatever, or ( 66 ) to grant any forbearance, and insists on raising the whole amounts of the judgments forthwith, and, to that end, has sued out executions. The prayer of the bill is that, as guardian, Henry J. Cannon may be decreed to acknowledge satisfaction of the judgments or one of them, as to the sum of $2,000, paid to him in his own bond; and also that he may render an account of Spruill's trust estate, and that such part of it shall be applied to these judgments as may be found to be their rateable share; and, in the mean while, for an injunction against further proceedings at law.
On the bill, supported by the usual affidavits, an injunction was awarded in vacation as to the sum of $5,000, part of the judgments.
Henry J. Cannon put in his answer, in which he admits that he was indebted to his wards in the sum of $2,000, and that he gave a bond therefor to Spruill, then the guardian. But he denies that he refused to allow a credit therefor on the judgments; and, on the contrary, he states that he received the bond from Spruill at the time the judgments were rendered, and that he immediately acknowledged satisfaction of record for so much of one of the judgments; and that it is only for the residue, after allowing that credit, that he took out execution. The answer, after admitting the deed of trust made by Spruill, *Page 48 
as charged, further states, that when he was about to sell the property, many judgment creditors of Spruill alleged that the deed was fraudulent in law, and void, and caused the property to be seized by the sheriff on their executions; and, the title being disputed, it was manifest that the property, if sold either by the trustee or the sheriff, would be sacrificed, to the great injury of those creditors, whoever they might be, that were entitled to it; and, therefore, that it was agreed on 7 January, 1842, by both sets of creditors, that a sale should be so made as to convey to the purchaser a good title at all events, and thereby get fair prices; and, in order thereto, that the sheriff should discharge his levies, and the sale be made under the deed and the price received by the defendant, as trustee; but that a case should be made, or an action at law instituted ( 67 ) between the sheriff and the trustee, for the purpose of having the validity of the deed determined; and, as it might be held to be valid or invalid, that the defendant should pay the money to the creditors provided for therein, or to those entitled under the execution; and that, in the meanwhile, the defendant should invest the money in the purchase of such judgments as he might deem secure, so as to be able to raise it upon short notice, when needed for those who might be held entitled to it. As a part of the answer, the defendant exhibited the agreement referred to, which was executed under seal by the sheriff, the creditors by execution, by the defendant and by the present plaintiffs and the other creditors in the deed of trust. The answer then states that the defendant made the sales as before mentioned, and, in conformity to the agreement, invested the proceeds in good judgments, to await the decision as to the right; that, immediately after the agreement, an action was brought and a case made therein by counsel for the two classes of creditors, for the purpose of getting the judgment of the highest legal tribunal of the State upon the point, whether the deed was good or not; and that the same has been diligently pursued on both sides, but has not yet been determined; whereupon it is uncertain, and, as the defendant is advised, doubtful, whether the deed will be supported or not, and, consequently, whether anything will be derived from that source, applicable to these debts. The answer further states, that some money is needed to discharge claims upon the estates of the wards, which their former guardian left unpaid, and to defray the expenses of their education at the University where they are students. But the defendant admits that the plaintiffs offered to make advances for those purposes, and to give further security for the debt; and that he declined the offer, because he did not *Page 49 
consider his wards or himself under any obligation to do so, and it was the interest of his wards, as he thought, as well as more convenient to himself, to have the business of the former guardianship closed, and the funds invested in other hands.
Upon the answer, the defendant moved for a dissolution of the injunction, which was decreed; and the plaintiffs ( 68 ) were then allowed to appeal.
All the statements of the bill, on which an equity might be raised, are so directly denied or effectually avoided in the answer, as to leave no doubt of the correctness of his Honor's decree. With respect to the debt, which the present guardian owed his wards, it appears that the bill proceeds on an entire mistake of fact. The answer admits that it ought to have been credited on the judgments, but it states that it was so credited at the time of taking the judgments.
With respect to the transactions connected with Spruill's assignment, without admitting that a creditor has not the choice of remedies, either upon a security obtained from the principal debtor, or against a surety — leaving to the latter the benefit of the security by way of reimbursing him; and, particularly, without admitting that infant creditors can be restricted to such a security on property as the debtor may have thought proper to provide, we hold that, at all events, the surety can not require the creditor to look to such a security in the first instance, if it be not plainly a valid security, under which the creditor can have speedy, direct and certain redress — as much so as that which the law gives him against the surety himself. The debtor and the surety have no power to embarrass the creditor in any such manner. And we hold this the more especially when the supposed security can not be enforced, but is suspended in its operation indefinitely by a litigation, instituted to determine its validity, under an arrangement between the sureties themselves and those who contest the deal. The trustee might have sold for cash such title as he had under the deed; and, after applying the proceeds, whether little or much, there could be no objection to the creditors then raising the balance from the sureties. But to avoid a loss to themselves from such a sale, the sureties interposed and had a sale in ( 69 ) another manner, by which better prices were to be realized, and for their benefit, in case the deed should be held good; but that question is yet to be determined at law. It would be *Page 50 
unreasonable that the creditor should be compelled to await the decision, and suspend proceedings on a judgment already obtained at law against the principal and the sureties.
As to the allegations that the debt is or will be made secure, and that the situation of the infants creates no necessity for calling it in, it is sufficient to say that, if true, it constitutes no equity in bar of the execution. It is the duty of a guardian to keep the ward's money at interest and on good security; and that, under the penalty of being answerable for compound interest, if he will not reasonably endeavor to make it, and for the debt, if he allows it to remain on insufficient security. The Court, therefore, never undertakes to dictate to whom a guardian shall lend money, nor how long he shall lend it to a particular person. The investments are in the guardian's discretion, as they are upon his responsibility.
It must, accordingly, be certified that there is no error in the decree, and the plaintiffs must pay the costs in this Court.
PER CURIAM. ORDERED ACCORDINGLY.
(70)